IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES       Plaintiff, | | No.   CR-S-08-0453 LKK (GGH) |
| vs. | | MEMORANDUM |
| JESS VERNON BRASIER    Defendant. | | |
| _____ / | | |
| UNITED STATES       Plaintiff, | | No.   CR-S-08-0518 LKK (GGH) |
| vs. | | |
| | | MEMORANDUM |
| EDWARD TIMOTHY JONES, | | |
| JESS VERNON BRASIER, et al. | | |
| _____ / | | |

Defendant, Jess Vernon Brasier, is a defendant in the above two captioned cases, both of which involve marijuana cultivation/trafficking. In the first case (08-453), according to the complaint, Brasier admitted cultivating a significant portion of the marijuana found on his property. Co-defendant Teskey admitted to assisting Brasier with cultivating marijuana on Brasier's property. Brasier pled not guilty. Despite the weight of the evidence in the first case, the "least important factor in a detention analysis," see infra, the undersigned ordered Brasier released on conditions based in large part upon his up-to-that-time relatively slight criminal record as reported by pretrial services.

A little over a month later, Brasier was arrested again (08-518), alleged to have

1

1  assisted a number of persons in taking (robbing) marijuana from a distant property and its
2  cultivators.  He did so by counseling one of the perpetrators as to who should comprise the
3  "team" which was to take the marijuana, and in loaning his trailer to the team for the purpose of
4  hauling the drug plants.  Marijuana was again found in a significant amount in a dried form in
5  Brasier's home upon search of Brasier's premises, and at a separate address on Brasier's property.
6  Brasier was alleged to have control, in whole or in part, of all residences on his property.  The
7  team was alleged to have participated in other actual robberies in which marijuana was stolen
8  from other cultivators at gunpoint and by ruse of the team dressing up as police officers.
9  Brasier's trailer was again utilized for some of these robberies.

10         Subsequent to his second arrest, he appeared in the first case on a pretrial release
11  revocation hearing, and in the second case on an initial detention hearing, before the Honorable
12  Kimberly Mueller, who after a lengthy hearing, issued detention orders in both cases.  It appears
13  from the transcript that the bases for detention rested upon Brasier's alleged further marijuana
14  trafficking, including his apparent control over areas on his premises which were associated with
15  found marijuana in the second case.

16         On September 15, 2009, Braiser filed a motion seeking release in both cases based
17  on asserted new and material evidence associated with the second case.  Specifically, Brasier
18  contended that utility receipts in Brasier's name were actually for utility service for others who
19  Braiser permitted to reside on his property.  Also introduced were "distribution" sheets
20  demonstrating, at least on their face, that Brasier had not been factored in as a recipient for drug
21  proceeds connected with the marijuana robberies.  The three pounds or so of dried marijuana
22  found in the Brasier residence itself was asserted to have been overlooked by the DEA agents, as
23  well as the Brasiers, during and after the first search.  Brasier was alleged to be undergoing
24  deleterious health problems based on his incarceration.  A declaration filed by Brasier's wife
25  recounted that after the first arrest, Brasier had exclaimed his desire not to have anything further
26  to do with marijuana.  These points were argued further at hearing on September 24, 2009.

2

The government argued that statements by co-defendant Jones directly implicated Brasier in the second case, and significantly corroborated the other evidence demonstrating Brasier's complicity in at least the first marijuana robbery. Brasier's indictment in the second case charged in Count I a conspiracy to possess marijuana for sale, and in Count II, possession of marijuana for sale.

Due to the somewhat unusual "cutting out" of Brasier from marijuana proceeds, at least as demonstrated on the "distribution" sheets, the undersigned requested to see the police statement of co-defendant Jones and other evidence implicating Brasier in the second case. AUSA Beckwith produced this evidence as requested. The undersigned reviewed this evidence and issued a summary order on October 5, 2009, finding that insufficient new and material evidence was presented to change the determination of Judge Mueller to detain Brasier. This memorandum describes the reasons for the summary order.

First, it is important to distinguish between the legal stands involved in the two cases. For initial detention hearings, as was held in the second case, the government bears the burden of proof on flight risk by a preponderance of the evidence, and danger to the community by clear and convincing evidence. United States v. Motamedi, 767 F.2d 1403, 1406-07 (9th Cir. 1985). In significant drug trafficking cases, such as these two cases, the government may rely on the rebuttable presumption established by Congress that defendants in such cases are presumed to be a flight risk and a danger to the community. 18 U.S.C. § 3142 (e)(3). The presumption is part of the evidence as a whole that the judicial officer may rely upon; however, the government maintains the burden of proof. United States v. Hir, 517 F.3d 1081 (9th Cir. 2008). Weight of the evidence is a factor, but the least important factor in the analysis. Id. at 1090.

However, in a pretrial release revocation proceeding governed by 18 U.S.C. § 3148, applicable to the first case, a different standard is employed:

> *The judicial officer shall enter an order of revocation and detention* if, after a hearing, the judicial officer--
> (1) finds that there is--

3

```
       (A) probable cause to believe that the person has committed a Federal, State, or
       local crime while on release; or
       (B) clear and convincing evidence that the person has violated any other condition
       of release; and
   (2) finds that--
       (A) based on the factors set forth in section 3142(g) of this title, there is no
       condition or combination of conditions of release that will assure that the person
       will not flee or pose a danger to the safety of any other person or the community;
       or
       (B) the person is unlikely to abide by any condition or combination of conditions
       of release.
```

(Emphasis added)

The commission of any crime while on pretrial release gives rise to the rebuttable presumption of flight and danger.

Only the § 3148 standard will be analyzed herein; if detention is warranted under this more lenient-to- the- government revocation standard, the initial determination standard is a moot issue– detention is detention regardless of possible release in another case under another standard.  Further, by the terms of § 3148, weight of the evidence here is much more important. The statute focuses on the commission of the new crime and the evidence that supports it, in that one half of the statutory revocation equation involves evidence of the new crime.

Finally, the task of the undersigned here is not to determine initially the matter of detention under the statute de novo, but first whether defendant has established sufficient new and material evidence to warrant a review of Judge Mueller's decision under the statute.  If sufficient new and material evidence exists, a de novo review is then entertained.  See United States v.Flores, 856 F. Supp. 1400 (E.D. Cal. 1994) (discussing the new and material standard under 18 U.S.C. § 3142(f).[1]

The undersigned reviewed a good deal, but not all, of the videotaped police interviews of Edmond Jones.  The tape revealed a co-defendant initially reluctant to implicate

---

[1] It is an open question whether a § 3148 decision is open to reconsideration at all since that statute does not contain the reopening language pertinent to initial decisions to detain or release.  However, since the parties do not raise the issue, the undersigned will presume that the same standard applies.

4

Braiser.  Eventually, however, Jones spelled out the facts that Brasier counseled him on who to recruit for the marijuana robbery(s), and offered his trailer to haul the marijuana.  The reluctance appears to have been self-imposed by Jones, and nothing implicating Braiser in the interviews could be deemed to have been the result of unduly coerced statements.  The debriefing reports of Jones submitted by the government further detail that Brasier planted the idea of the marijuana robbers posing as law enforcement.  Although Brasier was reluctant to have the marijuana transported back to any of his property, Eric Sills, who was present at this point in the Jones/Brasier conversations argued that the empty trailer on Brasier's property was a good place to store the marijuana since it had been empty at the time of the first search.  Eric Sills was going to use the proceeds from marijuana robberies to "pay for a lawyer for Jess Brasier."  Finally, Jones reported Brasier's advice that any sale of the stolen marijuana should await a time subsequent to the ususal harvest time for marijuana because the marijuana would be more valuable then.[2]

In the filed plea agreement signed by Jones and filed on September 29, 2009, he again states that he consulted with Brasier about the crime, that Brasier assisted in recruitment for the crime, and that Brasier lent the robbers his trailer to facilitate the marijuana transportation.

There is no doubt given the indictment itself and Jones' statements that pursuant to § 3148, probable cause exists to believe that Brasier committed a crime while out on pretrial release.  While the crime seems more akin to aiding and abetting than the conspiracy charged,[3]

---

[2] Brasier's counsel argues strongly that the lack of implication of Braiser by other members of the team clearly indicates that Jones is in error or worse in his statements.  However, aside from Sills, whose statements, if any, are not before the court, the remainder of the team was not likely to have had any personal knowledge concerning Brasier's involvement.

[3] There does not appear to be much evidence of an agreement on Brasier's part with the team; rather, the evidence shows that he knew of the "team's" criminal plans,  and specifically intended to encourage/ facilitate these plans with advice and use of his trailer and/or truck as well as his land-- quintessential aiding and abetting.  In aiding and abetting, the evidence must demonstrate that the defendant " 'associate[d] himself with the venture, that he participate[d] in it as something he wish[ed] to bring about, and that he [sought] by his action to make it succeed.'

5

the existence of *a* crime committed by Brasier is strong.  It does not matter that there is, at present, no proof that Brasier profited by the crime, and only one piece of circumstantial hearsay evidence that he intended to profit;  his perverse sort of mentorship and facilitation of the robbery of the marijuana for whatever reason suffices.

A presumption arises that Brasier is a flight risk and a danger to the community. § 3148, supra.  As trial approaches in the first case, and in light of the admissions in that case, there appears to be a strong probability of conviction there.  When the penalties in this first case are added to potential penalties in the second case, the undersigned does not believe that the initial security posted in the first case is sufficient from a flight risk perspective.

However, the undersigned need not rest his decision on flight risk in that participation in a second marijuana crime, when pending proceedings on the first crime, establishes that Judge Mueller was correct in detaining Brasier pursuant to § 3148.  There is simply insufficient new and material evidence presented by Braiser countering that participation to review her finding in light of the record as a whole.

DATED: October 17, 2009

/s/ Gregory G. Hollows
_____
GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

---

" United States v. Smith, 832 F.2d 1167, 1170 (9th Cir.1987) (alterations in original) (quoting Nye & Nissen v. United States, 336 U.S. 613, 619, 69 S.Ct. 766 (1949)).  In contrast,  "'one who has knowledge of a conspiracy but happens to act in a way which furthers some object or purpose of the conspiracy doesn't thereby become a conspirator'" and that "'a person doesn't become a conspirator merely by associating with one or more persons who are conspirators, nor merely by knowing that a conspiracy exists.'" United States v. Reed, 575 F.3d 900, 926 n.19 (9th Cir. 2009) approving the quoted jury instruction.  Regardless, § 3148 simply requires probable cause to believe that the released defendant committed *a* crime, and the undersigned finds that requirement established by the evidence.